**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SIMON NICHOLAS RICHMOND, | CIVIL ACTION NO. 13-1944 (MLC) |
| Plaintiff, | |
| v. | |
| LUMISOL ELECTRICAL LTD., et al., | |
| Defendants. | |

| | |
|---|---|
| SIMON NICHOLAS RICHMOND, | CIVIL ACTION NO. 13-1949 (MLC) |
| Plaintiff, | |
| v. | |
| QUANZHOU BRIGHT SOLAR ENERGY CO. LTD, et al., | |
| Defendants. | |

| | |
|---|---|
| SIMON NICHOLAS RICHMOND, | CIVIL ACTION NO. 13-1950 (MLC) |
| Plaintiff, | |
| v. | |
| DAINTILY LLC, et al., | |
| Defendants. | |

| | |
|---|---|
| SIMON NICHOLAS RICHMOND, | CIVIL ACTION NO. 13-1951 (MLC) |
| Plaintiff, | |
| v. | |
| WINCHANCE SOLAR FUJIAN TECHNOLOGY CO. LTD., et al., | |
| Defendants. | |

| | |
|---|---|
| SIMON NICHOLAS RICHMOND, | CIVIL ACTION NO. 13-1952 (MLC) |
| Plaintiff, | |
| v. | |
| JIAWEI NORTH AMERICA INC., et al., | |
| Defendants. | |

| | |
|---|---|
| SIMON NICHOLAS RICHMOND, | CIVIL ACTION NO. 13-1953 (MLC) |
| Plaintiff, | |
| v. | |
| JIAWEI NORTH AMERICA INC., et al., | |
| Defendants. | |

| | |
|---|---|
| SIMON NICHOLAS RICHMOND, | CIVIL ACTION NO. 13-1954 (MLC) |
| Plaintiff, | |
| v. | |
| WINCHANCE SOLAR FUJIAN TECHNOLOGY CO. LTD., et al., | |
| Defendants. | |

| | |
|---|---|
| SIMON NICHOLAS RICHMOND, | CIVIL ACTION NO. 13-1957 (MLC) |
| Plaintiff, | |
| v. | |
| CHIEN LUEN INDUSTRIES CO., LTD., INC., et al., | |
| Defendants. | |

| | |
|---|---|
| SIMON NICHOLAS RICHMOND, | CIVIL ACTION NO. 13-1958 (MLC) |
| Plaintiff, | |
| v. | |
| ATICO INTERNATIONAL (ASIA) LTD., et al., | |
| Defendants. | |

SIMON NICHOLAS RICHMOND,

 Plaintiff,

 v.

WINCHANCE SOLAR FUJIAN
TECHNOLOGY CO. LTD., et al.,

 Defendants.

CIVIL ACTION NO. 13-1959 (MLC)

SIMON NICHOLAS RICHMOND,

 Plaintiff,

 v.

SMART SOLAR INC., et al.,

 Defendants.

CIVIL ACTION NO. 13-1960 (MLC)

SIMON NICHOLAS RICHMOND,

 Plaintiff,

 v.

WALGREEN CO.,

 Defendant.

CIVIL ACTION NO. 13-2916 (MLC)

**MEMORANDUM OPINION**

**COOPER**, **District Judge**

The facts and procedural history pertinent to this memorandum opinion are contained in the Court's opinion dated April 30, 2014.  (See dkt. entry no. 105, 4-30-14 Op.) [1]   On that date, this Court ordered the parties to show cause "why, in all twelve actions, each action should not be severed into separate actions for each defendant."  (Dkt. entry no. 106, 4-30-14 Order to Show Cause at 4.)

Plaintiff, Simon Nicholas Richmond ("Plaintiff"), responded to the Court's Order to Show Cause ("OTSC") that, "[w]ith a few exceptions, including where Defendants are known or alleged to be the parent, subsidiary, or a pseudonym of another named Defendant(s) in a group, Plaintiff does not contest the severance of Defendants into separate lawsuits."  (Dkt. entry no. 111, Pl.'s Response to OTSC at 1.)  Plaintiff obtained stipulations from several of the defendants in some of the twelve lawsuits in which certain groups of defendants consented to being joined in one action.  (See id. at 5-7.)  These defendants consenting to joinder often had similar names, were represented by the same attorneys, and were related in some way, generally by a parent-subsidiary relationship or common ownership.  (See id. at 5-7; id. at Ex. B; dkt. entry no. 111-4, Shiells Decl. at Ex. 4.)  Several groups of defendants refused to stipulate to joinder.  (See Pl.'s Response to OTSC at 8-25.)  Plaintiff argues that the Court should join certain groups of defendants despite the refusal of consent where defendants have a parent-subsidiary relationship or where defendants are alter egos of one another.  (See id. at

---

[1]        Citations to the docket are for Civil Action No. 13-1944 unless otherwise stated.

8-25.)  A few of the defendants also responded to the OTSC, some supporting the methods of severance as articulated by Plaintiff and some supporting further severance of defendants into separate actions for each defendant.  (See dkt. entry nos. 114-18.)

Plaintiff presented special arguments with regard to Civil Action No. 13-1959, Plaintiff's case involving his so-called "utility patents."  (Pl.'s Response to OTSC at 25-27.) According to Plaintiff, a holder of a utility patent may, pursuant to 35 U.S.C. § 289, recover profits "of not only the manufacturer or producer of an infringing article, but also the profits of other sellers in the chain of distribution."  (Id. at 26 (quoting Bergstrom v. Sears, Roebuck & Co., 496 F.Supp. 476, 495 (D. Minn. 1980)).)  Plaintiff argues that, because he may recover profits from everyone in the chain of commerce for the utility patents, "it is essential that each of the 'other sellers in the chain' remain joined in the case, so that each can answer in damages for their own profits."  (Id. at 27.)   Defendant Coleman Cable, LLC (as successor in interest to Coleman Cable, Inc.) ("Coleman") objected to this line of argument.  (Dkt. entry no. 115, Coleman Reply at 3-4.)  Coleman explains that indemnity agreements are still at play in Civil Action No. 13-1959, and, as such, severance is still warranted.  (Id. at 4.)  Coleman, an upstream defendant which has indemnity agreements with several of the downstream retailer defendants, argues that "[i]n the event that Coleman were ever to be found liable for infringement of the design patent, Richmond would then be entitled to get the discovery on profits from the indemnified retailers, and such profits would still be paid by Coleman under its documented indemnity obligations."  (Id.)

The Court, having reviewed the parties' responses to the OTSC, is persuaded that the interests of judicial economy will be best served if the claims of all Defendants in all twelve cases are severed from one another. The Court's April 30, 2014 Opinion expressed two concerns underlying its suggestion for total severance: (1) that competitor defendants not be joined in the same action in violation of 35 U.S.C. § 299; and (2) that the claims against the downstream retailer defendants should be stayed pending resolution of the claims against the upstream defendants. (See 4-30-14 Op. at 19-20.) The latter concern is based on the "peripheral nature" of the claims against the downstream retailer defendants and on the fact that "some of defendants have agreed to indemnify other defendants, particularly those downstream in the stream of commerce." (Id. at 13-14, 19-20.) The Court also agrees with Coleman's reasoning that issues relating to indemnity agreements are still at play in Civil Action No. 13-1959, and thus, the fact that Plaintiff argues that he may obtain damages at all levels in the stream of commerce does not alter the conclusion that the indemnifying upstream defendant is the "real party in interest." (Id. at 19-20.)

The fact that some defendants that Plaintiff seeks to join in one lawsuit are not competitors and that some defendants have consented to joinder does not convince the Court to permit such joinder. While the joinder of non-competitor defendants is not barred by 35 U.S.C. § 299 where the Defendants operate in the same stream of commerce at different levels and thus are part of the same transaction or occurrence (see 4-30-14 Op. at 18-20), "joinder still may be refused in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." In re Nintendo Co, 544

7

Fed.Appx. 934, 939 (Fed. Cir. 2013) (internal quotation marks and citation omitted).  The

Court has discretion, pursuant to Federal Rule of Civil Procedure ("Rule") 21, to "add or drop

a party" or "sever any claim against a party."  The Court believes that it is appropriate to

exercise its discretion to sever in these circumstances, even where joinder is not technically

barred by 35 U.S.C. § 299.  Plaintiff, by filing claims against over eighty defendants in twelve

lawsuits (see 4-30-14 Op. at 7), has placed an undue burden on the judiciary and the Clerk of

the Court by seeking relief under only twelve docket numbers and paying only twelve filing

fees.

Plaintiff has argued that other, non-competitor defendants who have not consented

should be joined based on their parent-subsidiary relationship or because they are alter egos of

one another.  But the existence of a parent-subsidiary relationship does not mean that the

parties are one and the same.  (See Coleman Reply at 9 ("[W]hen a subsidiary makes a sale, it

is not, as a matter of law, the same transaction, as when another party, be it a subsidiary,

parent, or other related entity, makes a sale.").)  Parent-subsidiary or alter-ego relationships

also do not indicate whether the related parties operate at that same level of commerce, nor do

they alleviate concerns relating to indemnity agreements.  For example, in one of the

stipulations, the "HSN retailer defendants" agreed to be grouped together with certain vendor

defendants who "are defending and indemnifying each of the [HSN retailer defendants] in the

present action, as they are the manufacturer, vendor, and/or supplier of the Accused Products

to the [HSN retailer defendants], and importer of the Accused Products into the United

States."  (Shiells Decl., Ex. 4, HSN Stip. at 2.)  Plaintiff also states in his brief that several

defendants alleged to be alter egos of one another that "[r]ather than competing with one and other, these Defendants share or split between them the tasks of manufacturing, shipping, importing, selling or offering to sell the accused infringing products." (Pl.'s Response to OTSC at 18-19.) While these related parties may be grouped together for case management purposes, the likelihood that some of these related parties will have the claims against them stayed as the claims against their relatives proceed counsels against maintaining them in one lawsuit.

The Court, for these reasons, will exercise its prerogative under Rule 21 to sever all claims against all defendants in all twelve actions. Following severance, the parties are directed to consult with the Magistrate Judge to group the lawsuits into different categories based on the alleged relationships between the parties and the level of commerce at which each defendant operates and then stay the actions against the downstream retailer defendants subject to indemnification from upstream defendants. The Court defers to the judgment of the Magistrate Judge in the first instance on how this is best accomplished.

The Court will order Plaintiff to file amended complaints against each defendant in each separate action. The Court encourages Plaintiff to revise his complaints, as they will be subject to, inter alia, motions to dismiss. In particular, Plaintiff is directed to the requirements of Form 18 and Rule 8(a)(2) and to alter-ego pleading principles. (See dkt. entry no. 100, 4-10-14 Op.)[2]  Given the number of defendants and patents and products at issue, the need for

---

[2]     The Court's April 10, 2014 Order dismissed the complaint in Civil Action No. 13-1944 only. However, the issues noted by the Court with respect to the No. 13-1944 complaint appear to have infected complaints in the other cases brought by Plaintiff. (See, e.g., Coleman Reply at 6-7.)

clear pleadings cannot be emphasized enough.  (See, e.g., dkt. entry no. 118, Lumisol

Electrical Ltd. et al. Reply at 5 ("In his proposed Second Amended Complaint, Richmond

pleads 44 counts against 9 defendants asserting 4 patents in an unintelligible mess.  Separate

complaints would not only facilitate the determination of which cases should be stayed, but

would provide clarity as to the causes of action against each of the [defendants].").)  The

amended complaints should be tailored to the alleged wrongdoing of each individual

defendant.  Moreover, Plaintiff may correct the issues associated with the alleged incorrect

naming of certain defendants in his amended complaints.  (See, e.g., Pl.'s Response to OTSC

at 8 n.12; dkt. entry no. 117, Dentons' Defs.' Reply at 3 & n.3.)

     When severing defendants, the Court is mindful of the difficulties faced by Plaintiff

relating to "[s]ervice under the Hague Convention in China."  (Pl.'s Response to OTSC at 28-

29.)  To alleviate these concerns, the Court will adopt the Plaintiff's suggestions as to which

defendant should be kept in the particular case's civil action number.  (Id. at Ex. C.)  For these

"First Retained Defendants," Plaintiff will not be required to issue service of process, but he

will be required to serve these defendants with amended complaints as previously described.

With respect to new actions brought by Plaintiff against defendants who were previously

served with process under the prior civil action number, Plaintiff may, when filing his new

complaints, submit an application to the Court seeking an order deeming the service of

process in the original action to be service of process, nunc pro tunc, under the new civil

action number.  The Court would be inclined to grant such a request.  Plaintiff would still be

required to serve the new complaint in these new civil actions as if the new complaint were an amended complaint.

 For these reasons, the Court will sever all claims against all defendants in all twelve actions.  The Court will issue an appropriate order.[3]


             s/ Mary L. Cooper  
           **MARY L. COOPER**
           United States District Judge


Dated: July 3, 2014

---

[3] The parties have raised a variety of case management issues in their responses to the OTSC. (See, e.g., dkt. entry no. 114, Pine Top Reply at 3 ("Pine Top would respectfully request that the Court order both Pine Top and Richmond . . . to appear in person for a day of mediation before an appropriate Magistrate Judge of this District."); Dentons' Defs.' Reply at 3 ("Dentons reiterates its request to withdraw" from representing Winchance Solar Fujian Technology Co. Ltd.).)  The parties may raise such issues with the Magistrate Judge once the amended pleadings are filed in accordance with this memorandum opinion and accompanying order.